Patricia SWEENEY, Plaintiff,

v.

GERBER PRODUCTS COMPANY MEDICAL BENEFITS PLAN, Defendant.

No. CV 89–0–669.

United States District Court, D. Nebraska.

Dec. 20, 1989.

James R. Welsh, Omaha, Neb., for plaintiff.

Thomas E. Johnson and Steven D. Davidson, Omaha, Neb., for defendant.

## MEMORANDUM OPINION AND ORDER

CAMBRIDGE, District Judge.

### INTRODUCTION

This matter is before the Court for decision following an expedited two and one-half day trial of a claim brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. A hearing on a claim for a preliminary injunction was combined with the trial on the merits.

The Court has considered the pleadings, the testimony of the witnesses, the documents and other evidence of record, and the parties' briefs, and having considered the same, hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The plaintiff was an employee of Gerber Products Company, and in the course of her employment became eligible to join and did join the Gerber Products Company Medical Benefits Plan ("plan").

2. Gerber Products Company is the plan administrator and Prudential Insurance Company of America is the named fiduciary for claims review and decision making.

3. In June of 1987 the plaintiff was diagnosed by Dr. Henry Lynch as having breast cancer. After this diagnosis, the plaintiff underwent several cycles of conventional chemotherapy treatment consisting of Cytoxan and Adriamycin. In November of 1987, a modified radical mastectomy of the left breast was performed on the plaintiff. In March of 1988, the plaintiff was examined, and there was no evidence of recurrence. However, by February of 1989, the plaintiff had developed nodes in her neck which were diagnosed to be recurrent cancer. Presently, the cancer has spread to the plaintiff's abdomen, and she has been diagnosed as having metastatic disease. The plaintiff is no longer responding to conventional doses of chemotherapy.

4. The plaintiff has been referred by Dr. Lynch to a program at the University of Nebraska Medical Center which involves a process known as autologous bone marrow transplantation ("ABMT"). This program essentially involves the use of bone marrow purification combined with high-dosage chemotherapy, and is administered by Dr. Karel Dicke, M.D. Doctor Dicke has proposed that the plaintiff undergo a treatment procedure utilizing high dose chemotherapy, including cytoxan, VP–16 and CIS-platinum, accompanied by autologous bone marrow transplantation, and followed by doses of mitoxantrone and thiotepa.

5. A description of the proposed treatment was submitted to Prudential for pre-certification of benefits. The claim was considered and denied in reliance upon the following provision of the plan:

*The Medical Expense Benefit Does Not Cover:*

\* \* \* \* \* \*

4. Unnecessary services and supplies, including tests and check-up examinations, that are not needed for medical care of a diagnosed sickness or injury. To be "needed", a service or supply must be (a) ordered by a doctor, (b) commonly and customarily recognized throughout the doctor's profession as appropriate in the treatment or diagnosis of the sickness or injury, (c) neither educational or experimental in nature, (investigational procedures are considered experimental), and (d) neither furnished mainly for the purpose of medical nor other research. . . .

**596**

Thus, Prudential denied the claim for benefits on the grounds that the proposed treatment for the plaintiff is not commonly and customarily recognized throughout the doctor's profession as appropriate and on the grounds that the treatment is considered educational, experimental, or investigational in nature.

6. Prior to issuing its denial of plaintiff's claim, Prudential examined the plaintiff's medical history, the specific treatment regimen which was proposed, and the current state of medical literature discussing the viability of high-dosage chemotherapy accompanied by ABMT. Prudential also obtained the opinions of three outside consultants/oncologists.

7. High dose chemotherapy accompanied by ABMT as a treatment for breast cancer is in an early stage of development. At most, the treatment is in phase II clinical trials, which is the stage at which the efficacy of a treatment is studied. The current state of medical research and knowledge about the use of the procedure as treatment for breast cancer supports a conclusion that the treatment is "investigational" and "experimental" (as those terms are ordinarily defined), and has not yet been "commonly and customarily" (as those terms are ordinarily defined) recognized throughout the medical profession as appropriate in the treatment of metastatic breast cancer. The consensus in the literature is that the treatment is experimental and investigational. The doctors' own consent forms as well as the protocols are replete with the terms "study," "research," "investigation," "experiment," etc. Even in regard to the plaintiff, Patricia Sweeney, the treatment would be experimental and investigational. The record is clear that among the doctors currently administering the treatment, several different protocols are being experimented with. Different doctors are experimenting with different drugs in different dosages. The protocol that Dr. Dicke would use to save or lengthen Mrs. Sweeney's life, is not the protocol which another doctor would use.

## CONCLUSIONS OF LAW

1. The Gerber Products Company Medical Benefits Plan is an "employee welfare benefit plan" as that term is defined in 29 U.S.C. § 1002(1). As such, this case is controlled in its entirety by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461. This Court has Jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B).

2. As this matter involves an employee welfare benefit plan covered by ERISA, all state laws which would otherwise apply are preempted.

■ 3. Under Section I(A) of the Administrative Services Agreement No. 49910 (tr. exhibit 1–A), which is part of the plan, Gerber Products Company "retains all final authority and responsibility for the Plan and its operation and ... Prudential is empowered to act on behalf of [Gerber Products Company] in connection with the Plan ... as expressly stated in [the] agreement or as mutually agreed to in writing by Prudential and [Gerber Products Company]." Additionally, under Section I(A)(1) of exhibit B of the Administrative Services Agreement No. 49910, Gerber Products Company and Prudential have agreed that for purposes of ERISA, "Prudential shall be the 'appropriate named fiduciary' of the Plan for the purpose of such review [of claims] and decision thereon, ... Prudential's decision on any claim shall be final ..." By virtue of these provisions of the Plan, the Plan gives the named fiduciary the discretionary authority to determine eligibility for benefits. Thus, the decision to deny benefits in this case should be upheld unless arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. ——, ——, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989); *Lakey v. Remington Arms Co., Inc.*, 874 F.2d 541, 544 (8th Cir.1989).

■ 4. The decision to deny benefits in this case was based upon a reasonable interpretation of plan provisions, was made in good faith, and was made following a detailed factual background investigation of the claim and the proposed treatment.

5. The determination that high dose chemotherapy accompanied by autologous bone marrow transplantation as a treatment for metastatic breast cancer is experi-

mental and investigational, or is not commonly and customarily recognized throughout the doctor's profession as appropriate in the treatment of metastatic breast cancer, is reasonable, and made after a rational consideration of relevant facts.

6. Thus, the decision to deny benefits in this case was not arbitrary and capricious; and therefore

7. The plaintiff's claims for benefits should be denied, the request for a preliminary injunction should be denied, and judgment should be entered in favor of the defendant, Gerber Products Company Medical Benefits Plan.

The Court notes that even if it were obligated to make a *de novo* determination of the plaintiff's eligibility for benefits under the plan rather than to review the decision under the arbitrary and capricious standard, the Court would still conclude that the Plaintiff is not entitled to benefits for the type of treatment which is the subject of this lawsuit.

## CONCLUSION

As much as this Court sympathizes with the plaintiff, and understands her desire to undergo the treatment which is the subject of this lawsuit in hopes of prolonging her life, the Court cannot order the defendant medical benefits plan to do that which it is not legally obligated to do. There is no question that high dose chemotherapy accompanied by autologous bone marrow transplantation as a treatment for breast cancer, remains today a treatment which is in an experimental and investigational stage. There is also no question that the defendant medical benefits plan excludes coverage for such treatment.

IT THEREFORE IS ORDERED:

1. That the plaintiff's claim for benefits is denied;

2. That judgment is entered in favor of the defendant; and

3. That this action is dismissed.